UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| FRANK GRIFFIN | CIVIL ACTION |
| VERSUS | NO. 15-0158 |
| N. BURL CAIN, WARDEN | SECTION "I"(4) |

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

### I. Factual Background

The petitioner, Frank Griffin ("Griffin"), is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] On May 5, 1997, Griffin was indicted by a Tangipahoa Parish Grand Jury for the second degree murder of Jeanette Spurlock.[3] Griffin entered a plea of not guilty to the charge on May 14, 1997.[4]

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 3.

[3] St. Rec. Vol. 1 of 3, Indictment, 5/5/97.

[4] St. Rec. Vol. 1 of 7, Docket Entry, 5/14/97.

The record reflects that, on November 12, 1994, Jeanette Spurlock was found dead in her car after being shot in the head.[5]  Three years later, in 1997, Griffin and another person, Allen Williams, were arrested and questioned about the murder.  Both gave inculpatory statements to the police about their involvement in the robbery and murder of Spurlock.  While their stories differed, both Griffin and Williams indicated that they stopped Spurlock's car on a dark, rural road, Griffin pointed a gun at her head and asked for money, and Griffin shot Spurlock point blank when she told him she had no money.  Griffin was sixteen (16) years old when he killed Spurlock.

Griffin was tried before a jury on October 19, 20, and 21, 1999, and was found guilty as charged.[6]  The Trial Court sentenced Griffin on November 8, 1999, to serve life in prison without benefit of parole, probation, or suspension of sentence.[7]  His conviction and sentence were affirmed on direct appeal by the Louisiana First Circuit on December 22, 2000.[8]  The Louisiana Supreme Court denied Griffin's related writ application without stated reasons on February 1, 2002.[9]

After unsuccessful attempts at post-conviction relief unrelated to this petition, on or about June 13 or 14, 2013,[10] Griffin submitted a motion to correct his sentence based on the United States

---

[5]The facts were taken from the unpublished opinion of the Louisiana First Circuit Court of Appeal on direct appeal.  St. Rec. Vol. 2 of 3, 1st Cir. Opinion, 00-KA-0836, pp. 2, 7-8, 12/22/00; *see also*, *State v. Griffin*, 778 So.2d 96 (La. App. 1st Cir. Jan. 31, 2001) (Table).

[6]St. Rec. Vol. 2 of 3, Docket Entry, 10/19/99; Docket Entry, 10/20/99; Docket Entry, 10/21/99; Trial Transcript (continued), 10/19-21/99; St. Rec. Vol. 1 of 3, Jury Verdict, 10/21/99; Trial Transcript, 10/19-21/99.

[7]St. Rec. Vol. 2 of 3, Docket Entry, 11/8/99.

[8]St. Rec. Vol. 2 of 3, 1st Cir. Opinion, 00-KA-0836, 12/22/00; *see also*, *State v. Griffin*, 778 So.2d at 96.

[9]*State ex rel. Griffin v. State*, 808 So.2d 327 (La. 2002); St. Rec. Vol. 3 of 3, La. S. Ct. Order, 2001-KA-1364, 2/1/02; La. S. Ct. Writ Application, 01-KH-1364, 5/9/01 (dated 1/25/01).

[10]Although this pleading was filed by the state trial court on June 18, 2013, in his later filed reply to this Court's order, Griffin asserted that he placed this pleading in the mail at the prison on June 13 or 14, 2013.  Rec. Doc.

Supreme Court's opinion in *Miller v. Alabama*, __ U.S. __, 132 S. Ct. 2455 (2012), which held that a life sentence imposed upon a juvenile without benefit of parole was unconstitutional. The Trial Court denied the motion without stated reasons on June 27, 2013.

Griffin sought review of the order in the Louisiana First Circuit.[11] On November 4, 2013, the Court denied the writ application on the showing made noting that Griffin failed to include certain documents with his writ application and giving him until December 30, 2013, to file a new writ application.[12] The Louisiana First Circuit later denied Griffin's corrected writ application on March 14, 2014, finding that the relief he sought was untimely under the holding in *State v. Tate*, 130 So.2d 829 (La. 2013), *cert. denied*, __ U.S. __, 134 S. Ct. 2663 (2014), in which the Louisiana Supreme Court determined that *Miller* did not retroactively apply on collateral review.[13] The Louisiana Supreme Court also denied Griffin's related writ application on January 9, 2015, for seeking untimely relief, citing *Tate*.[14]

## II.   Federal Habeas Petition

On February 20, 2015, after correction of certain deficiencies, the clerk of this Court filed Griffin's petition for federal habeas corpus relief in which he asserts that the life sentence without

---

No. 19. The prison officials could not provide any better information regarding the date the prison officials received this pleading from him for mailing. Rec. Doc. No. 20.

[11]St. Rec. Vol. 3 of 3, 1st Cir. Writ Application, 2013-KW-1251, dated 7/15/13.

[12]St. Rec. Vol. 2 of 3, 1st Cir. Order, 2013-KW-1251, 11/4/13.

[13]Rec. Doc. No. 3-1, p. 4, 1st Cir. Order, 2013-KW-2127, 3/14/14. The State failed to provide the Court with a copy of Griffin's corrected writ application in No. 2013-KW-2127. The Court has confirmed with the Clerk of the Louisiana First Circuit that the writ application was filed on December 4, 2013.

[14]St. Rec. Vol. 3 of 3, La. S. Ct. Order, 2014-KH-0780, 1/9/15; La. S. Ct. Writ Application, 14-KH-780, 4/15/14 (dated 4/7/14).

benefit of parole which was imposed upon him for a crime committed while he was a juvenile is unconstitutional under the Supreme Court's holding in *Miller*.[15]

The State initially filed a response arguing that the holding in *Miller* was not retroactively applicable on collateral review which rendered Griffin's habeas petition untimely filed under federal law.[16] The Court thereafter stayed these proceedings pending the United States Supreme Court's resolution of the retroactivity issue in *Montgomery v. Louisiana*, __ U.S. __, 135 S. Ct. 1546 (2015).[17] Following the Supreme Court's ruling in *Montgomery* confirming *Miller*'s retroactive application, the Court lifted the stay and ordered additional briefing.[18]

The State supplemented it's response to assert that Griffin's federal petition still was untimely filed more than one-year after the *Miller* decision and that relief from his sentence otherwise would be forthcoming under state law through proposed legislation being considered by the Louisiana legislature.[19]

On July 29, 2016, the Court ordered *inter alia* that the State provide an updated status on any efforts made by Griffin or the State to correct Griffin's sentence in accordance with *Miller*.[20] The State failed to respond to that order. On November 8, 2016, the Court ordered the State to show cause for its failure to respond to the prior order or provide a current status of Griffin's state criminal proceedings.[21] According to its response, on November 10, 2016, counsel for the

---

[15] Rec. Doc. No. 3.

[16] Rec. Doc. No. 12.

[17] Rec. Doc. No. 14.

[18] Rec. Doc. Nos. 15, 16.

[19] Rec. Doc. No. 17.

[20] Rec. Doc. No. 18.

[21] Rec. Doc. No. 21.

respondent finally moved the state trial court to revisit correction of Griffin's sentence in light of *Montgomery* and *Miller*.[22]  That motion has been scheduled before the state trial court for November 30, 2016.[23]

### III.     General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[24] applies to this petition, which is deemed filed in this Court under the federal mailbox rule on January 20, 2015.[25]  The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and the claims must not be in "procedural default." *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

---

[22] Rec. Doc. No. 22.

[23] Rec. Doc. No. 22.

[24] The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[25] The Fifth Circuit recognizes that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court docketed Griffin's deficient federal habeas petition on January 26, 2015, shortly after it was electronically received from Singleton, and the case was later opened on February 20, 2015, when the filing fee was paid. According to the official stamp of the prison, the legal department processed Griffin's pleadings for electronic mailing on January 20, 2015. Rec. Doc. No. 3-2, p. 26; Rec. Doc. No. 1-2, p. 26. The prison records contain no clarification on when Griffin placed in pleadings in the prison mail system. *See* Rec. Doc. No. 20. Griffin suggests that he placed the pleadings in the prison mail on January 15 or 16, 2015. Rec. Doc. No. 19. In either case, there is no question that no mail was processed from the prison or the legal department over the weekend of January 17 and 18, 2015, and Monday, January 19, 2015, which was Martin Luther King Day. Nevertheless, the delay in filing makes no difference in the timeliness of Griffin's federal petition. In addition, the fact that he later paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. See *Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if the filing fee is not paid at time of mailing) (citing *Spotville*, 149 F.3d at 376).

As indicated above, the State contends that Griffin's federal petition was filed more than one-year after the *Miller* decision and is not timely filed under federal law.  The State's finality and timeliness calculation contains multiple errors, including the complete failure to recognize and account for Griffin's appellate writ application No. 2013-KW-2127.[26]  In an effort to provide clarity to the record, the Court sought and obtained additional information from Griffin and the prison officials regarding his efforts to mail his state court pleadings and his federal petition in a timely manner.[27]  Having reviewed the information received, the records confirm that Griffin's federal petition was signed and submitted to this Court for filing within one-year of the issuance of *Miller*, after proper application of the prison mailbox rule and statutory tolling is given for the pendency of Griffin's Louisiana First Circuit Writ No. 2013-KW-2127.  Griffin's federal petition was timely filed.

For the reasons that follow, the writ of habeas corpus should be issued in Griffin's favor in accordance with *Miller* and its progeny.

## IV.  **Griffin Is Entitled To Relief**

The record reflects that shortly after *Miller* was issued by the United States Supreme Court, Griffin moved to correct his illegal sentence of life in prison without benefit of parole which was imposed upon him while he was a juvenile.  His efforts in the state courts were unsuccessful based on the Louisiana courts' conclusions at the time that *Miller* was not retroactively applicable on collateral review.  The Supreme Court's *Montgomery* opinion issued January 25, 2016, has made clear that *Miller* is retroactively applicable to persons like Griffin.

---

[26]See Rec. Doc. No. 17, p. 3 (failing to recognize the refiled writ application, No. 2013-KW-2127).
[27]Rec. Doc. No. 20, 21, 22.

Since that time, Louisiana has failed to implement the legislation previously referenced by the State which may have provide a means to correct a *Miller* sentence, and the state trial court has failed to revisit Griffin's sentence in particular. Griffin undoubtedly is entitled under *Miller* and *Montgomery* to relief from his life sentence without benefit of parole imposed upon him for a crime committed while he was a juvenile. The State in fact concedes this, although it arguably challenges the scope of the new sentence to be imposed under *Miller*.

Nevertheless, the procedural history of this case demonstrates that the state courts have had more than ample opportunity to address the retroactive application of *Miller* to Griffin and have failed to do so. It has been more than four years since the issuance of *Miller* and ten months since the issuance of *Montgomery* on January 25, 2016, pointing to the error in the state courts' approach to cases like these. Nevertheless, Griffin remains in jail under an unconstitutional sentence.

The State and the state trial court have delayed any effort to correct the sentence. As outlined earlier, it took counsel for the State until November 10, 2016, to move the state trial court to take action on Griffin's sentence. This motion by the State was made two days <u>after</u> the Show Cause Order was issued by this Court and over three months <u>after</u> this Court first ordered a status update from the State. Simply put, since the issuance of *Montgomery*, the State and the state trial court have done nothing to move Griffin any closer to a constitutionally valid sentence.

Griffin was sixteen years old at the time he committed the murder for which he was sentenced to life in prison without benefit of parole, probation or suspension of sentence. Pursuant to *Miller* and *Montgomery*, Griffin's life sentence without benefit of parole is unconstitutional, and he is entitled to resentencing and federal habeas corpus relief.

This federal district court has broad discretion to determine the relief that will promote and foster comity between the state and federal courts. *See Hilton v. Braunskill*, 481 U.S. 770, 775 (1987) (Section 2243 vests the district courts with "broad discretion in conditioning a judgment granting habeas relief.")  The federal courts, however, are limited to the conditional use of the writ of habeas corpus to require the state courts to meet constitutional standards before mandating release. *Smith v. Lucas*, 9 F.3d 359, 366-67 (5th Cir. 1993).  The conditional grant of the writ enhances the "AEDPA's goal of promoting comity, finality and federalism by giving state courts the first opportunity to review [the] claim and to correct any constitutional violation in the first instance," *Jimenez v. Quarterman*, 555 U.S. 113, 121 (2009) (quoting *Carey v. Saffold*, 536 U.S. 214, 220 (2002)).

In this case, the State should be allowed "an opportunity to correct the constitutional violation found by the [federal] court" in its own courts. *See Hilton*, 481 U.S. at 775.  The Supreme Court itself made clear that the states have options in correcting *Miller* violations, including the offer of parole eligibility rather than resentencing. *Montgomery*, 136 S. Ct. at 736.  To the extent Griffin may ask this Court to direct or fashion the sentence to be imposed, that is not a remedy available under *Miller*.

For the foregoing reasons, the Court finds that Griffin's current life sentence without benefit of parole is unconstitutional under *Miller* and that the state courts, in the first instance, should determine the appropriate sentence or remedy to correct that violation in compliance with *Miller*.

## V.  Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Frank Griffin's petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **GRANTED**, his sentence to life in prison without benefit of parole be **VACATED**, and the 21st Judicial District Court for Tangipahoa Parish, Louisiana, be **ORDERED** to, within ninety (90) days of issuance of the district court's order, either resentence Griffin or otherwise bring his sentence into conformity with *Miller v. Alabama*, __ U.S. __, 132 S. Ct. 2455 (2012), or release Griffin from confinement.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[28]

New Orleans, Louisiana, this 30th day of November, 2016.

_____
**KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE**

---

[28] *Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

9